## HOBACK v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. · November 14, 1922.)

No. 1980.

1. **Embezzlement ⬩⟲⟶30—Indictment for conversion of property by federal officer need not allege who owned property.**

   In an indictment of a federal narcotic officer for selling and converting liquor seized by him, it was not necessary that the particular ownership of the liquor be alleged, the essence of the offense being embezzlement or conversion of property coming into defendant's possession or control by virtue of his office, whether belonging to the government or another; but, even if necessary to allege ownership, this was plainly made in the charge that defendant as a federal officer was in possession of a stated amount of whisky coming into his possession under color or claim of authority as a federal officer, the lawful possession of the United States through its agent being sufficient ownership.

2. **Embezzlement ⬩⟲⟶29—Allegation of value held unnecessary.**

   In an indictment of a federal narcotic officer for selling and converting liquor seized by him, allegation in the indictment of value was unnecessary, since the statute makes no distinction in the crime based on difference in value.

3. **Embezzlement ⬩⟲⟶6—Larceny ⬩⟲⟶5—Contraband liquor may be the subject of larceny and embezzlement.**

   Contraband liquor may be the subject of larceny and embezzlement.

4. **Indictment and information ⬩⟲⟶129(1)—Indictment held to charge distinct offenses based on same act.**

   In an indictment of a federal narcotic officer for selling and converting liquor seized by him, counts alleging, respectively, unlawful transportation and selling of the liquor otherwise than as authorized in the National Prohibition Act (41 Stat. 305), and the illicit converting to his own use of such liquor, *held* to charge distinct offenses.

5. **Criminal law ⬩⟲⟶29, 1208(3)—Statute as to embezzlement by internal revenue officer construed.**

   Criminal Code, § 97 (Comp. St. § 10265), providing that an embezzling internal revenue officer "shall, where the offense is not otherwise punishable by some statute of the United States," be fined or imprisoned as therein provided, does not mean that there can be no conviction under that section if another statute denounces the same offense, but means only that the punishment therein prescribed shall not be inflicted if any other statute provides a different punishment for the same offense; hence it is no defense that the offense proved under an indictment under section 97 was punishable under section 47 (Comp. St. § 10214), relating to embezzlement generally.

6. **Criminal law ⬩⟲⟶1167(1)—Immaterial what statute pleader had in mind, if charges, proof, and punishment covered by some statute.**

   It is wholly immaterial what statute the United States attorney had in mind in drawing the indictment, if the charges and proof made are covered by some statute of the United States, and the sentence does not exceed the penalty provided for violation of such statute.

7. **Criminal law ⬩⟲⟶377—Availability of evidence of accused's good character not limited to cases of reasonable doubt.**

   The availability to accused of evidence of his good character is not limited to cases where other evidence has created reasonable doubt of his guilt, for in such cases accused would be entitled to acquittal without further evidence.

⬩⟲⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⬅︎561(3), 815(6)—Good character may create reasonable doubt; instruction omitting consideration of character evidence with other proof properly refused.**

Good character evidence may of itself create a reasonable doubt, when considered with other evidence in the case; but an instruction omitting the element of its consideration in connection with all the other evidence in the case is properly refused.

**9. Criminal law ⬅︎769—Practice as to giving instructions.**

The better practice is that the court should direct the minds of the jury to the general principles of the law of the case, which should be applied by them in reaching a correct conclusion on all the essential questions, as distinguished from matters purely collateral, submitted for their consideration, and especially where the court has been asked to charge as to a particular matter of substantive defense, even though the request for the charge is inaccurate because of verbal omissions, which may easily be cured by the charge as a whole.

**10. Criminal law ⬅︎1173(2)—Omission to charge on weight of good character evidence held prejudicial error.**

In prosecution of federal narcotic officer for selling and converting liquor seized by him, where the prosecution's evidence was that of an alleged accomplice, and, while there was corroboration of his story, the circumstances were consistent with accused's innocence, if the defense made by his explanation and denial had been believed, and he proved his previous good character by convincing evidence, omission to charge on the weight of good character evidence, as to which an erroneous request to charge had been made, *held* prejudicial error.

Wood, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

F. S. Hoback was convicted of offenses, and brings error. Reversed and remanded.

R. E. Byrd, of Richmond, Va., and Waller R. Staples, of Roanoke, Va., for plaintiff in error.

C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va., and William A. Stuart, Sp. Asst. U. S. Atty., of Abingdon, Va.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. The defendant was tried on 9 of the 21 counts of the indictment, the others having been nol. prossed. He was convicted on the eleventh and nineteenth, and acquitted of the charges made in the other 7.

The eleventh count charged:

"That on the ——— day of ———, 1920, F. S. Hoback did unlawfully possess, transport, and sell intoxicating liquor, to wit, fifty-four quarts of whisky, otherwise than as authorized in the National Prohibition Act, that is to say, for intoxicating beverage purposes."

Under it this bill of particulars was served:

"That some time between the 1st of October and the 31st day of December, 1920, on the Williamson road, F. S. Hoback and several others arrested and seized from a man by the name of Joynes about 19 cases of bottled in bond liquor; a large portion of said liquor, to wit, about 100 quarts, was sold by Hoback to one E. E. Wright, who paid Hoback for a portion thereof a sum of money amounting to about $400."

---

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The nineteenth count charged:

"That on the ———— day of ————, 1920, F. S. Hoback, being an officer of the United States, to wit, a federal narcotic agent, unlawfully did wrongfully convert to his own use certain property which had come into his possession and under his control in the execution of his said office, and under color and claim of authority as such officer, to wit, fifty-four quarts of whisky."

The bill of particulars was:

"That some time between the 1st of October and the 31st day of December, 1920, on the Williamson road, F. S. Hoback and several others arrested and seized from a man by the name of Joynes about 19 cases of bottled in bond liquor; a large portion of said liquor, to wit, about 100 quarts, was sold by Hoback to one E. E. Wright, who paid Hoback for a portion thereof a sum of money, amounting to about $100, which said sum of money the said Hoback converted to his own use."

The defendant was a federal narcotic officer, who sometimes aided in the enforcement of the Prohibition Law. The principal witness against him was E. E. Wright, a federal prohibition officer. A brief summary of his testimony is as follows:

The defendant Hoback and four others, Mason, Eanes, Wright, and White, agreed that a telegram should be sent to Baltimore to an illicit liquor dealer there to send to Roanoke an automobile loaded with whisky. The telegram was sent, and in accordance with a prearranged plan, one night in October, 1920, Wright and Hoback took with them in an automobile two honest officers, Bailey and Roberts, to the place on the Williamson road where one Joynes had agreed to deliver the whisky from an automobile to Eanes and Mason. Wright, Hoback, Bailey, and Roberts hid behind corn shocks. Wright, in response to an agreed signal from Eanes, was to give the signal to Hoback, Bailey, and Roberts for arrest and seizure. These signals were delayed until Joynes, Eanes, and Mason had transferred all the whisky, except a few quarts, from Joynes' car to that of Eanes and Mason. On Wright's signal Hoback, Bailey, and Roberts rushed forward; Eanes and Mason, being ready at the signal according to the understanding with their confederates, escaped with their car, containing about 220 quarts of liquor, leaving only about 12 quarts in Joynes' automobile to be seized. Roberts, not being in the plot, fired at the fugitives. In accordance with the agreed plan, by Hoback's direction, Roberts and Bailey took Joynes and the 8 quarts seized to Roanoke, where Joynes was put in prison. Hoback and Wright remained behind on the pretense of undertaking to find and arrest Eanes and Mason and seize the whisky carried away by them. What they actually did was to join Eanes and Mason and divide with them the 220 quarts of whisky. The 110 quarts received in the division by Wright and Hoback was afterwards sold by Wright. Of the proceeds, $900, he paid Hoback $450.

Defendant testified that all of Wright's statements which imputed any connivance or improper action or purpose to him were false; that he made no corrupt agreement with Wright; that he had no whisky from Eanes and Mason; and that throughout he was in good faith making an honest effort to apprehend Joynes and seize the contraband liquor in the discharge of his official duty. There is testimony tending

to corroborate the testimony of Wright, and testimony tending to exculpate the defendant. Analysis of the facts is not required here, since the conflict made an issue exclusively for the jury.

[1] The demurrer was properly overruled. It was not necessary to allege the whisky to be the property of the United States, or to name any other person as the owner. The essence of the offense created by the statute is embezzlement or conversion of property which came into the possession of defendant or under his control in the execution of a governmental office or employment, or under color or claim of authority as an officer. The provision of the statute that it makes no difference whether the property converted or embezzled belongs to the United States or to some other person connotes that the particular ownership is immaterial and need not be alleged. In United States v. Davis, 243 U. S. 572, 37 Sup. Ct. 442, 61 L. Ed. 906, the court refused to consider the question of ownership, on the ground that under the statute it was sufficient if the money or property embezzled was not the property of the officer named. But, even if an allegation of ownership had been necessary, it is plainly made in the charge that Hoback as a federal officer was in possession of 54 quarts of whisky which had come into his possession under color or claim of authority as an officer of the United States. The lawful possession of the United States through its agent was sufficient ownership. The defendant could not be heard to say the United States was not the owner. Spencer v. United States, 169 Fed. 562, 95 C. C. A. 60; 20 C. J. 425.

[2] Allegation of value was not necessary, since the statute makes no distinction in the crime based on difference in value. 20 C. J. 464.

[3] There is nothing in the point that contraband liquor cannot be the subject of larceny and embezzlement. The trend of authorities to the contrary is unbroken. Many of them are cited in 20 C. J. 418.

[4] Counts 11 and 19 charge distinct offenses. The transportation and sale of whisky by any one without authority of law is a crime, and that is charged in the eleventh count; the illicit conversion to his own use and sale by defendant, acting as an officer of the United States, was the wrongful conversion designated by the statute, and charged in the nineteenth count. Carter v. McClaughry, 183 U. S. 365, 22 Sup. Ct. 181, 46 L. Ed. 236; Gavieres v. United States, 220 U. S. 338, 31 Sup. Ct. 421, 55 L. Ed. 489.

[5] It is contended that an indictment will lie under section 97 of Criminal Code (Comp. St. § 10265) only "where the offense is not otherwise punishable by some statute of the United States," and that the offense, if any, proved was punishable under section 47 (Comp. St. § 10214), relating to embezzlement generally. It seems hardly necessary to say that the statute means that the punishment therein prescribed shall not be inflicted if any other statute provides a different punishment for the same offense—not that there can be no conviction under section 97 if another statute denounces the same offense.

[6] Even if the proof had made out an offense under section 47, and not under section 97, that would not affect the conviction and sentence of three years' imprisonment. It is wholly immaterial what statute the United States Attorney had in mind, if the charges and proof made

are covered by some statute of the United States and the sentence does not exceed the penalty provided for violation of such statute. Williams v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 42 L. Ed. 509.

Thirty-eight witnesses of standing in the community testified to the good character of the accused for probity and honesty. In view of this testimony, it is contended the presiding judge erred in refusing to give the following requests, separately submitted:

"The court instructs the jury that the evidence of the good character of the accused is of high importance, if the case is one of reasonable doubt, and good character should make it preponderate in favor of the accused."

"The jury are instructed that the evidence of the good character of the accused should be considered by the jury in determining the guilt of the defendant, and that such evidence may be of itself sufficient to raise a reasonable doubt in the minds of the jury."

[7] It is apparent, at a glance, that the first request was properly refused. Indeed, it should never have been asked on behalf of defendant. The request, in effect, told the jury that, if there was a reasonable doubt of defendant's guilt, the evidence of his good character should resolve that doubt in his favor. To say that a defendant's good character, clearly established, will avail him only in a case of doubt, is the same as saying that it is of no consequence in a criminal case at all; for, if the other evidence has, in itself, created a reasonable doubt, the defendant is entitled to be acquitted. It is certainly not now the rule that a person charged with a crime may avail himself of his good character only in cases in which he would be acquitted if such proof were not offered.

[8] .The second clause of the request is subject to criticism only to the extent that it failed to state that the evidence of good character should be considered by the jury *in connection with all the other evidence in the case.* It, in fact, told the jury that they might consider the evidence of good character, which, of course, was correct. It likewise told the jury that such evidence might, of itself, create a reasonable doubt; and that this is the law in the federal courts, when such evidence is considered with all the other evidence in the case, is no longer open to question. In the Edgington Case, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, the Supreme Court said:

"Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

[9] We have, therefore, to consider whether the omission, in the respect we have pointed out, from the request as tendered to the court, relieved the court of all obligation to give any instruction on the subject. In many of the state courts, including those of Virginia, it is not the practice of the court, unless specially requested, to charge the jury as to the law in the case, and in many such courts there is no obliga-

tion imposed on the court to correct an erroneously worded instruction; but in the federal courts where, for the most part, the practice is to charge the jury in a criminal case, the better practice it seems to us—where this custom is adopted—is that the court should direct the minds of the jury to the general principles of the law of the case which should be applied by them in reaching a correct conclusion upon all the essential questions, as distinguished from matters purely collateral, submitted for their consideration, and especially where the court has been asked to charge as to a particular matter of substantive defense, even though the request for the charge is inaccurate, because of verbal omissions, which may easily be cured by the charge as a whole.

[10] The case under consideration is peculiarly one in which evidence of defendant's general good character was relevant and entitled to consideration. The evidence upon which the prosecution depended was that of an alleged accomplice, and, while there was corroboration of the story told by him, the circumstances were consistent with the defendant's innocence, if the defense made by his explanation and denial had been believed. In support of the probability of this being true, and of the improbability of the evidence against him, he proved his previous good character by convincing evidence, and, as was said in Heine v. Commonwealth, 91 Pa. 145, such evidence is "not a mere makeweight, thrown in to assist in the production of a result that would happen at all events, but it is positive evidence, and may, by itself, by the creation of a reasonable doubt, produce an acquittal."

The charge of the court to the jury is subject to no other special criticism than the omission of any mention of the weight to be given by the jury to the evidence of good character. It was intended to be a charge on the law of the whole case. As far as it went, it safeguarded every right which the defendant was entitled to demand, but from beginning to end there was an entire absence of any statement from the court as to the rule of law applicable to such evidence. While the fact is one of universal recognition that the life of a person is the most certain testimony for or against him, it by no means follows that a jury would, ordinarily, understand that a general reputation for probity and honorable living, established in one's home, when proven by competent evidence, was entitled to the weight which the courts now with practical unanimity agree is the case. The very fact that such evidence was, until within a few years, in many courts held only of weight in doubtful cases, negatives such a conclusion.

What would have been the result in this case, if a proper instruction on the subject of the weight to be given to evidence of good character had been given, is not possible now to say, though we are strongly impressed that the defendant may have been prejudiced by such failure. A strong prima facie case was made out by the main witness for the prosecution. If true, the conviction of defendant ought to have resulted. If untrue, as was claimed by defendant, he should have been acquitted, and in determining this issue we think the jury should have been instructed as to the weight to be given to evidence of good character; that is to say, that the accused having introduced testimony tending to establish his uniform good character, if the jury believed,

he had established the same, such fact was entitled to much consideration at their hands, and might, when considered in connection with the other evidence in the case, generate a reasonable doubt as to his guilt of the offense charged.

For failure of the court so to charge the jury, we think the judgment should be reversed, and the case remanded for a new trial in accordance with this opinion.

Reversed.

WOODS, Circuit Judge (dissenting). I think the judgment should be affirmed. The requests to charge on the subject of good character were as follows:

"The court instructs the jury that the evidence of the good character of the accused is of high importance, if the case is one of reasonable doubt, and good character should make it preponderate in favor of the accused."

"The jury are instructed that the evidence of the good character of the accused should be considered by the jury in determining the guilt of the defendant, and that such evidence may be of itself sufficient to raise a reasonable doubt in the minds of the jury."

It seems evident that the first request was properly refused. The District Judge was not bound to single out any particular item or kind of evidence and tell the jury it was of high importance. The last clause of this request would have carried to the mind of the jury the erroneous impression that good character should have preponderating influence.

The second request would have been sound, if it had been that evidence of good character, when considered with other evidence in the case, may be of itself sufficient to raise a reasonable doubt in the mind of the jury. But it was unsound, in that it separates evidence of good character from the direct and circumstantial evidence, the alleged inconsistencies in defendant's testimony, and his alleged inability to explain undisputed damaging testimony against him, and directs the jury's special attention to it as evidence upon which, without respect to other evidence, reasonable doubt and acquittal may be based.

Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, relied on as authority for the request, does not support it. The charge there under review was that evidence of good character could only be considered, if the rest of the evidence created a doubt of defendant's guilt. The court, in holding the charge erroneous, said:

"Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered, unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

This is now a legal truism. It is not too much to say that it was always a truism of common sense and common understanding. The court could hardly have expressed more clearly the law to be that the jury are to consider all the evidence, including that of good character,

and that, so viewing it, the evidence of good character may be sufficient to give rise to a reasonable doubt, even when the other evidence, without that of good character, would be convincing of defendant's guilt. The case gives no countenance to the instruction, here asked, that evidence of good character may be singled out, apart from the other evidence, and a verdict of acquittal based on it. The opinion contains no expression that evidence of character furnishes an exception to the rule laid down in Bird v. United States, 187 U. S. 118, 130, 23 Sup. Ct. 42, 47 L. Ed. 100, Perovich v. United States, 205 U. S. 86, 92, 27 Sup. Ct. 456, 51 L. Ed. 722, and many other cases, both state and federal, that the defendant has no right to an instruction to the jury laying emphasis on the force of any particular kind of testimony apart from the rest. On the contrary, the court clearly says that the weight to be given to the evidence of good character depends on all the circumstances appearing in the evidence.

It seems to me, therefore, clear that there was no error in refusing the requests submitted in this case. Indeed, their unsoundness seems to be conceded in the majority opinion. But the judgment is to be reversed on the ground that it was fatal error for the District Judge not to single out and emphasize proof of good character and its effect from the mass of evidence, and that it was also fatal error for the District Judge not to reform unsound instructions and make them correct. This is contrary to the practice established by the decisions of nearly all of the highest courts of the country, including the Supreme Court, expressly holding that a trial judge is not under the duty of reforming incorrect statements of the law in requests submitted to him on particular subjects, or special phases of the case, and that his failure to do so cannot be assigned as error. Catts v. Phalen, 2 How. 376, 381, 11 L. Ed. 306; Exchange Bank v. Moss, 149 Fed. 340, 341, 79 C. C. A. 278; 2 Thompson on Trials, § 2349; 38 Cyc. 1709, and cases cited.

Was the defendant as a practical matter prejudiced by the absence of a proper request and a special instruction to the effect that good character was to be considered along with all other testimony in considering the question of guilt or innocence, and might itself create a reasonable doubt of guilt? A judgment should not be reversed for failure of a judge to single out testimony as to one fact and tell the jury that which is universally known. The value of character and reputation as a protection against a charge of wrongdoing is taught in the family circle, in the school, and the pulpit. It is constantly emphasized in books and in social intercourse. Everybody knows and understands it. When good character is proved, no special instruction from a judge is necessary to make it a bulwark of defense in the mind of the jury, which can only be beaten down by irrefragable testimony. General experience of men warrants the statement that there is no kind of evidence to which juries attach more importance, and which they more spontaneously make a ground of acquittal, than the good character and reputation of the accused, or the bad character and reputation of the witnesses against him.

There would be more reason in the contention that the absence from the charge of specific reference to evidence of good character was prej-

udicial, if reference had been made in the charge to any other portion of the testimony. But no such reference was made. The case comes to this:

The verdict depended on the jury's view of the credibility of conflicting direct testimony, in the light of a mass of circumstantial evidence, and of the good reputation of the defendant and the bad reputation of the principal witness against him. The defendant submitted requests to charge on the weight to be given to evidence of good character which were not sound. The District Judge, in the exercise of a discretion which had strong reason to commend it, submitted the issue to the jury without the least indication of his own opinion, and without special reference to any portion of the evidence. In submitting the issue he did expressly instruct the jury:

"The testimony of an accomplice should be received by the jury with great caution, but there is no rule of law which prevents or forbids a jury from finding a defendant guilty on testimony of an accomplice, if the jury believes it to be true."

"Circumstantial evidence should be closely scrutinized, and acted upon only with the greatest caution. The weight to be given it is for you to determine. You can and should draw reasonable inferences from the facts established by the evidence. Circumstantial evidence alone will not justify a verdict of guilty, unless it be both consistent with the defendant's guilt and inconsistent with any other reasonable hypothesis."

"The law presumes that every person accused of crime is innocent. This presumption entitles the defendant to a verdict of not guilty, unless the burden of proof resting on the government has been sustained by evidence proving the defendant's guilt beyond all reasonable doubt."

"The burden of proof rests on the government. That burden cannot be borne by a mere preponderance of evidence; it can only be borne by evidence that satisfies you of every material element of any or all of these offenses beyond all reasonable doubt."

This was a perfectly fair submission of the whole evidence, and the law which should guide the jury in the consideration of it.