## A. P. LOUT et al. v. STATE.

No. A-5404.   Opinion Filed April 10, 1926.
(244 Pac. 818.)

74

Bond, Melton & Melton, for plaintiffs in error.

The Attorney General, and Houston B. Teehee and Chas. Hill Johns, Asst. Atty. Gen., for the State.

BESSEY, P. J. The plaintiffs in error, A. P. Lout and Alvia Lovett, here designated the defendants, were jointly charged with the murder of A. A. Brooks. At the trial each was convicted of manslaughter in the first degree, and by the verdict of the jury the punishment of each was fixed at confinement in the penitentiary for a term of 15 years.

The evidence shows that the deceased, A. A. Brooks, was a man 72 years of age, who for some time prior to his death had lived alone on leased premises near the town of Pocassett, in Grady county. Here he and the defendant Alvia Lovett and the latter's brother, Barney Lovett, operated a whisky still in a bar near the house in which Brooks was living. This still had been in operation for some months, and from time to time large quantities of whisky had been made, some of it being sold and some stored by the parties interested.

On the 22d day of May, 1924, the persons interested in operating this still learned that the officers had been informed of its existence and location, and that a search and seizure might follow. In order not to lose the whisky about the premises in different places, in casks and containers, defendant Lovett and the deceased Brooks hid these casks near an old straw stack in a pasture and in excavations in prairie dog towns near by. Lovett also dismantled the still and disposed of it in some manner not shown in the record.

All this was done after dark on the night of the 22d; the time required to hide the liquor and dispose of the still extending beyond midnight. Defendant Lovett then went to the home of the other defendant, A. P. Lout, some miles distant, arriving there about 2 o'clock in the morning of the 23d.

From this point on the evidence is somewhat conflicting, but there is evidence tending to show that Lovett told Lout what he had done, and asked Lout to go with him to the Brooks premises to get the balance of the whisky, or a portion of it, there hidden, and remove it, under an agreement that Lout should have a portion of the whisky so procured. Lout agreed to do this. Before starting, Lovett took Lout's pistol from the foot of the bed where the latter had been sleeping and carried it with him.

The two men then proceeded to a point in the highway some distance from where the whisky had been hidden. They walked over to the hidden place, and Lovett handed the pistol to Lout, and proceeded to explore for the whisky that was underground, with an iron rod. The night was dark and cloudy, and, while Lovett was trying to locate the whisky, Lout sat or reclined near by. Presently some shots were fired from near the straw stack close by. Lovett im-

mediately opened fire, firing two shots in the direction from whence he saw the flashes of fire from the gun first fired, and the two defendants immediately fled in different directions. At a distance of about a mile from the spot where the shooting occurred the defendants met again, and together they returned in their car to the Lout home, arriving there at about daybreak.

On the following morning, the morning of the 24th, a neighbor boy discovered the body of Brooks lying at the scene of the shooting. An examination of the body disclosed that a bullet from a gun of large caliber had entered the body to the right of the spinal column, about four inches below the shoulder blade, and that it had passed diagonally through the body, making its exit below the left nipple.

The outline of the evidence as recited above is gleaned from the physical facts shown, from the testimony of a little girl who was spending the night at the Lout home the night of the killing, and from the testimony of the defendants and the written confession of Lovett.

It is conceded that Lout had no proprietary interest in this whisky, and Lovett claims that he had none; that the whisky they sought to remove belonged to the deceased, Brooks, individually. On the other hand, there is evidence supporting the state's theory that Brooks and the Lovett brothers were jointly interested in the making of the whisky, and that they had from time to time, as the product came from the still, divided it among themselves, and that at the time of the homicide the defendants were attempting to steal the portion belonging to Brooks. The only ground urged for reversal of these convictions is the claim that the instructions to the jury did not correctly state the law applicable to the facts proved.

Instructions Nos. 9, 10, and 11 defined the law of

self-defense as it applied to the defendant Lout in the event that the jury found that Lout knew nothing about Brooks' interest in, or claim to, the whisky about to be removed, believing it to belong to defendant Lovett.

In instruction No. 13 the right of self-defense was defined, as it applied to both defendants, in the event that the jury found that they had conspired together to violate the law under the circumstances stated. This instruction was as follows:

"The court instructs the jury that, when two or more persons agree and confederate together to commit a crime under such circumstances as may, when tested by human experience, specifically result in the taking of human life, either in the execution or resistance of their unlawful plan, then each party to such common understanding, or conspiracy, will be held responsible for the consequences which might be reasonably expected to flow, and which do flow, from carrying into effect their unlawful combination, and from the taking of human life, if any, to accomplish the object of the conspiracy, even though such consequences were not specifically intended as a part of the original plan. So you are instructed, gentlemen, that, if you find and believe from the evidence in this case beyond a reasonable doubt that the defendants A. P. Lout and Alvia Lovett entered into a conspiracy to go and remove a certain quantity of whisky from the place where it was then hid or buried, to some other point, then the moving of the whisky from one point to another point in this state would be a misdemeanor, and, if in pursuance of said conspiracy or unlawful design they, or either of them, was armed with a pistol for the purpose of taking human life in order to prevent apprehension while carrying out their unlawful design or common purpose, or the taking of human life, if necessary, either in the execution or resistance of their unlawful design, and they or either of them, in carrying out or in furtherance of said unlawful design, did shoot and kill the deceased, Brooks, even though such consequence was not specifically intended as a part of the original plan, they cannot plead the right of self-defense herein, and

each would be guilty of the crime of manslaughter in the first degree."

The converse of the rule stated in No. 13 was stated in No. 14 as follows:

"You are further instructed, gentlemen, that should you find and believe from the evidence in this case, or entertain a reasonable doubt therefrom, that the defendants A. P. Lout and Alvia Lovett went to the place of the homicide for the purpose of removing certain whisky which was the property of the defendant Alvia Lovett, which had been made on the premises of the deceased, A. A. Brooks, with his consent, then the defendant Lovett would have a right to go upon the premises of the deceased and take the defendant Lout with him for the purpose of removing the same; and, if you further find and believe from the evidence, or entertain a reasonable doubt therefrom, that the deceased A. A. Brooks assaulted the defendants, or either of them, with a pistol or other deadly weapon, whereupon the defendant A. P. Lout shot and killed the said deceased, in his own necessary self-defense, as in these instructions defined to you, then in that event the defendant (sic) would not be guilty, and you should so find." (From the context it is apparent that the word "defendant" was used in a plural sense, meaning both defendants, and was so understood by the jury.)

This court will pay no attention to the dotting of an "i," or the crossing of a "t," or the omission of an "s," where the meaning of the text is clear, as in this case.

Complaint is made of instruction No. 15, which is as follows:

"In this connection, however, you are instructed that should you find and believe from the evidence beyond doubt that the defendants Lout and Lovett went upon the deceased's (A. A. Brooks') premises for the purpose of stealing whisky, or other property belonging to the deceased, A. A. Brooks, then in that event the deceased, Brooks, would have a right to use such force as reasonably appeared to him at the time to be necessary to prevent the commission of said crime."

It is urged that the expression "or other property" makes the instruction as a whole erroneous, for the reason that there is no evidence in the record supporting the theory that the defendants went on Brooks' premises for any other purpose than to obtain whisky.

There is no evidence indicating that the defendants intended to steal or take possession of any property except whisky, unless the inference might be drawn that they would at the same time take the kegs or other containers in which it was found, or possibly materials to make whisky, or parts of the still which had not been disposed of. In any event, the expression "or other property" was harmless, and could in no way have influenced the jury to the prejudice of the defendants.

Defendants complain that instruction No. 13 is in conflict with instruction No. 9. This contention is without merit, because instruction No. 9 does not purport to state a complete rule of self-defense, as applied to the different interpretation of the facts which might be deduced from the evidence. Instructions Nos. 10, 11, and 13 also relate to the subject of self-defense, and must all be considered together. These instructions, individually as far as they go, and considered as a whole, are not misleading.

It is next urged that instruction No. 13 does not correctly state the law as applied to the facts, in that it announces an erroneous theory, to the effect that a trespasser about to commit a misdemeanor has no right to self-defense. This objection would have some merit if the instruction in fact so stated. But the court correctly stated the rule by qualifying clauses that the right to self-defense is denied to a trespasser where the trespass is committed under such circumstances as may, when tested by human experience, result in the taking of human life, and where the trespasser went armed

upon the premises of another, in the night-time, for an unlawful purpose, with intent to kill in case such an emergency arose. Because of these and other qualifying clauses, the cases cited by defendants are not in point, and it would serve no good end to analyze and distinguish them.

The defendants further contend that instruction No. 15 is in conflict with the Eighteenth Amendment to the Constitution of the United States and the act of Congress known as the Volstead Act (U. S. Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and with our own state Constitution, which provide that no property rights attach to liquor illegally possessed, such as might constitute a basis for larceny or robbery. The weight of authority is to the contrary. Hoback v. United States (C. C. A.) 284 F. 529; People v. Wilson, 131 N. E. 609, 298 Ill. 275; State v. Friedman, 120 A. 8, 98 N. J. Law, 577; People v. Otis, 139 N. E. 562, 235 N. Y. 421; State v. Schoonover, 211 P. 756, 122 Wash. 562; Arner v. State, 19 Okla. Cr. 23, 197 P. 710.

In People v. Otis, supra, it was said:

"The statute further provides that 'no property rights shall exist' in liquor illegally possessed. There can be no larceny of property not subject to ownership. How then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words there is no answer, for it must be conceded that, to enforce the recent amendment to the Constitution, Congress may declare that to steal liquor shall no longer be a crime. It might think it wise to license theft so as to discourage intoxication. We should not, however, readily impute to it such a design. Commonwealth v. Rourke, 10 Cush. (Mass.) 397. Certainly the earlier declaration of the same statute [section 3] that its provisions are to be 'liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented' gives no indication of such a purpose. To so construe the lan-

guage of section 25 would be to encourage the transportation, distribution, and consumption of liquor by the thief."

In Arner v. State, supra, it was said:

"Section 3620, Revised Laws 1910 [section 7021, Comp. Stat. 1921], providing, 'there shall be no property rights of any kind whatsoever in any liquors, vessels, appliances, fixtures, bars, furniture and implements, kept or used for the purpose of violating any provisions of this chapter' (prohibitory liquor laws), does not alter or change the inherent character of such articles as personal property."

"Intoxicating liquor, possessing the inherent character of personal property, may be the subject-matter of robbery, irrespective of the purpose for which it is kept or used."

"It is not the policy of the law to encourage culpable defenses to criminal actions. It is the duty of this court to so construe the criminal laws of this state as to effectuate their purposes and give force and effect to the evident legislative intent. It is the business of the state, through its duly constituted peace officers, to bring such action as the law prescribes against contraband property and its users, and it is not the privilege of highwaymen to hold up at the point of a gun the possessors of contraband property and take it away from them by force, nor did the Legislature so intend by merely providing that such possessor should have no property rights in the property when unlawfully kept. Ample provision of law is made for the confiscation and taking of such contraband personal property, and it must be taken in the manner prescribed."

From the defendants' own testimony, the jury were justified in returning a verdict for manslaughter. Brooks was shot in the back—killed under circumstances which would have justified a conviction for murder.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.