Joseph Lloyd THOMAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18445.

United States Court of Appeals Fifth Circuit.

March 2, 1961.

Rehearing Denied April 4, 1961.

Edgar Corey, New Orleans, La. (on appeal only), for appellant.

T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for appellee.

Before TUTTLE, Chief Judge, HUTCHESON, Circuit Judge, and CLAYTON, District Judge.

TUTTLE, Chief Judge.

This appeal from a verdict of guilty and maximum sentence under the Bank Robbery Statute [1] presents a record which is bare of any attempt by counsel for the appellant to call to the attention

[1] 18 U.S.C.A. § 2113(a) and (d).

of the trial court any of the alleged errors which are here relied on for reversal.

■ Appellant was convicted of participating with two others in the robbery of a bank in Shreveport, Louisiana, by a threat of violence by the use of a dangerous weapon. On his trial he was identified by five eyewitnesses to the robbery and his participating in the offense was further testified to by an accomplice who had previously pleaded guilty The evidence supporting the jury's verdict was overwhelming. The only defense was alibi, testified to by the accused himself and by two casual acquaintances whose testimony was itself somewhat shaken on cross examination. The strength of the case made against the accused by the government is commented on in light of the fact that under familiar rules Courts of Appeals do not review actions of omission or commission by a trial court unless the accused "makes known to the court the action while he desires the court to take or his objection to the action of the court and the grounds therefor." Rule 51, F.R.Cr.P., 18 U.S.C.A. In order to overcome the provisions of Rule 51 appellant must bring himself within the "plain error" rule, rule 52, which provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the Court."

■ The principal ground of appellant's argument here is the action of the trial court which followed a surprise change of position by one Angelly who had previously pleaded guilty as an accomplice and who had given a sworn detailed confession prior to the trial. As the trial progressed the United States Attorney caused Angelly to be sworn as a witness for the prosecution.

"By Mr. Wilson: Q. Would you state your name for the Court and jury? A. Cecle Ray Angelly.

"Q. Mr. Angelly, it has been the testimony of five eye witnesses here that two robbers entered the Youree Drive Branch of the Commercial National Bank in Shreveport on February 13, 1958, and robbed that bank of better than $34,000. Did you participate in that robbery? A. No, sir.

"Q. What? A. No, sir.

"Mr. Wilson: May it please the Court, I would like to plead surprise at this time and impeach the witness.

"May I have the authority to cross examine him?

"Mr. Hayes: Your Honor, I don't see how the District Attorney can plead surprise when he has had this man locked up in the jail.

"The Court: State the circumstances of your surprise, Mr. Wilson?"

The prosecuting attorney very clearly stated facts establishing that he had been completely taken by surprise by Angelly's denial that he participated in the robbery. Thereupon, the trial court warned Angelly that he was under oath and that he would be subject to prosecution for perjury if he swore falsely, and he then permitted the United States attorney to question this witness on each statement of his prior written confession. He read each sentence and asked Angelly whether he made the statement and after Angelly answered "No", he then asked him, "Is it true?". To all the material questions Angelly stated that he did not make the statement and that the statement was not true. During the course of the questions, however, he did say he knew the defendant and he also interjected, "I will testify again, neither Joe Thomas or I robbed the bank. That is all I will say."

Angelly did admit that he had initialed each page of the statement and had signed it, but he persisted in his denial of the truth of the statement which purportedly was executed under oath.

As we have stated, defense counsel made no objection to the questioning of Angelly, except by making the remark, "Your Honor, I don't see how the District Attorney can plead surprise when

he has had this man locked up in the jail."

Inasmuch as Angelly had made no statement from the witness stand hurtful to the Government's case at the time the United States Attorney was taken by surprise, the proper procedure, if objection had been made, would have been for the witness to have been withdrawn before he was permitted to give any further testimony. This court has held in Culwell v. United States, 5 Cir., 194 F.2d 808, 811, that "Where there is a real surprise it is not proper to permit the impeachment testimony to go beyond the only purpose for which it is admissible, i. e., the removal of the damage the surprise has caused." See also Young v. United States, 5 Cir., 97 F.2d 200, 117 A.L.R. 316.

If to the first question Angelly had answered that the accused had not participated in or been present at the scene of the crime, some cross-examination would have been permissible to attack his credibility on the strength of Angelly's prior sworn statement to the contrary. This would be necessary in order to remove the damage the surprise caused.

Here, however, no damaging testimony was given until after much of the incriminating statement had been read to the witness. The Government was thus permitted to prove by the witness that he had signed a complete confession implicating the appellant but that he now repudiated it.

So much of our system of administration of justice depends on the right to counsel, and courts so frequently hold an accused to be bound by decisions and judgments made by counsel in the conduct of criminal trials, that we should not lightly determine that counsel in a case such as this quietly sat by while clearly inadmissible evidence was being introduced against their client without objection unless they had a good reason for doing so.

In light of the clear and convincing proof already introduced by eyewitnesses to the robbery which overwhelmingly identified Thomas as the guilty person counsel may well have considered that the only manner in which they could create reasonable doubt in the minds of the jury was by permitting the government to ask question after question of Angelly, touching on his purported complicity in the crime and having him deny categorically on each occasion that he knew anything about it.

The admission of evidence which is charged to be error in this case was not an inadvertent or hard to notice event that might have slipped by the observation of court or counsel. Some 35 pages of printed record are taken up with questions and answers touching on this repudiated confession. We think it perfectly clear that were we to reverse the judgment on account of this occurrence, it would be because the appellate court felt it proper to substitute its judgment for that of trial counsel as to trial tactics.

Other errors alleged to have occurred deal with the nature of the cross examination of defendant's witness, the participation by the trial court in the examination of witnesses, the failure of proof as to ownership of the stolen money and a failure of the court to charge with respect to certain of the matters in issue.

As to the conduct of the trial prior to the submission of the case to the jury, it is sufficient to say that counsel made no objection to the questions asked, took no exception to the action of the trial court in participating in the trial and made no motion for a mistrial for any of the actions which appellant now contends were in error and prejudicial to him.

As to the asserted failure of the proof as to the ownership of the money in the bank, we think that such failure, even if attacked by motion to acquit (See Lambert v. United States, 5 Cir., 101 F.2d 960) would not be vital since proof of the ownership of the money by the bank was not a part of the gravamen of the offense. See England v. United States, 5 Cir., 174 F.2d 466.

Appellant says with respect to the alleged deficiencies of the court's

charge, "Although any one of the above (omissions) standing alone might be insufficient to constitute error, see Hoback v. U. S. [4 Cir.] 284 Fed. 529, taken as a whole they show the jury was not properly charged because the instructions woefully failed to cover the issues in the case." Again, appellant seeks a reversal on a ground with respect to which his counsel utterly failed to preserve any alleged errors in the way provided by the Federal Rules. Rule 30 F.R.Cr.P., provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We have recognized and enforced this rule most recently in Tomley v. United States, 5 Cir., 250 F.2d 549.

We now come to a consideration of appellant's argument that notwithstanding the failure by his counsel to comply with the rules touching on the raising of points of error in the trial court, we should nevertheless notice them and reverse the judgment of conviction. As we noted initially, the record in this case, "shrieks the guilt of the parties." Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593. In such a situation, the United States Supreme Court has seen fit to affirm judgments of conviction, even where objection was properly made in the trial court, by applying the first paragraph in Rule 52. This paragraph provides, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Supreme Court places its consideration of such a case on the strength of the case made against the accused. In Lutwak, the Court said: "A defendant is entitled to a fair trial, but not a perfect one. This is a proper case for the application of Rule 52(a) of the Federal Rules of Criminal Procedure. We hold that the error was harmless." 344 U.S. at page 620, 73 S.Ct. at page 490.

In Krulewitch v. United States, 336, U.S. 440, 69 S.Ct. 716, 719, 93 L.Ed. 790, the Court held that it could not say that "The erroneous admission of the hearsay declaration may not have been the weight that tipped the scales against petitioner." This was true, as the Court said, because in that particular case, "The record persuades us that the jury's task was difficult at best." In Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 140, 3 L.Ed.2d 125, the Court again pointed out the closeness of the case and there said: "We cannot be sure that her evidence, though in part cumulative, did not tip the scales against petitioner on the *close* and vital issue of whether his prime motivation in making the interstate trip was immoral."

■ Since the Supreme Court considers it appropriate to consider the strength or weakness of the government's case in determining whether error, even where called to the trial court's attention, affects "substantial rights" of the accused, it seems clear that the same consideration to the strength of the government's case should be given when we are asked to ignore the requirements of Rule 51 and Rule 30, because the alleged errors "affect substantial rights." This then gives a plain answer in a case such as this where the proof of guilt was overwhelming and the utter failure of trial counsel to permit the trial court to pass on the points at issue may have been due to their chosen trial tactics.

The judgment is affirmed.

On Petition for Rehearing

PER CURIAM.

The motion for rehearing is denied. Since we did not make it clear, in the original opinion, that present counsel for appellant did not participate in the trial, we think it only appropriate to make it clear that the failure to preserve the asserted errors below, whether through inadvertence or as a part of trial tactics, is in no way attributable to counsel on appeal.