**Raymond V. TOMER and Anna Bradley, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 18742.

United States Court of Appeals Fifth Circuit.

June 23, 1961.

Rehearing Denied July 19, 1961.

J. Russell Hornsby, Hornsby & Newman, Orlando, Fla., for appellants.

Don M. Stichter, Asst. U. S. Atty., Tampa, Fla., E. Coleman Madsen, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The indictment charged that the two defendants received, concealed and retained certain personal property of the United States, consisting of coffee, canned fruits, eggs, butter, frozen orange juice, meats and miscellaneous foodstuffs, all having a value in excess of $100, which property had been stolen from the United States Air Force, knowing such property to have been stolen in violation of Section 641, Title 18 United States Code.

Anna Bradley was the owner of the Beachcomber Restaurant in Orlando, Florida. Raymond V. Tomer was her son and an employee of said restaurant. Mess Sergeant Crawford and Airman Bottoms, attached to the Mess Hall, had stolen foodstuffs from the McCoy Air Force Base at Orlando, Florida, and sold the same to the defendants. Crawford and Bottoms had been convicted earlier. They were key Government witnesses and admitted in the trial of this case that they supplied stolen foodstuffs to the Beachcomber Restaurant. On some of such occasions the value of the foodstuffs exceeded $100.

Crawford testified that his first contact was with Tomer; that he "had a list of some foodstuffs and explained to him how we run our Head Count; that there was always a lot of overages that were channeled out through different illegal ways, and there was never no—there would never be any investigation over these overages because we

had a way of covering it up in our records; and that I could supply him with just about anything he needed. And we discussed this and talked the price and all that, and then I began to bring deliveries." Crawford explained the "Head Count" as follows:

"* * * And a Head Count— the fellow that was supposed to take the Head Count, the number of people fed, he would just sign a slip; and then we would fill in the figures —which we were not supposed to do really—and we would put down eight hundred people we fed, which we really didn't. And we would draw more rations than we were really feeding people, is the reason that we had these overages. Which there should have been turned back in the rations breakdown, even if you do have overages."

Most of Crawford's dealings were through Tomer, but on several occasions he talked with Mrs. Bradley. On one such occasion, Mrs. Bradley directed Crawford and Tomer to delay delivery awhile because "there was (sic) still too many people around." That delivery was delayed for six or eight hours and finally made at one or two o'clock in the morning. Mrs. Bradley admitted to the F.B.I. Agent "that she knew that the restaurant had paid nineteen cents a pound for butter and that other foods which she did not describe, were purchased at a price which she knew to be something less than one-half of what the Beachcomber would normally pay to their wholesaler."

The groceries were delivered in boxes containing insignia signifying Government origin. Tomer admitted having such insignia removed. He admitted also concealing the foodstuffs when he was tipped off to an impending search of the premises. Government foodstuffs valued at $181.44 were recovered from Tomer's garage subsequent to his arrest.

Tomer and Mrs. Bradley testified as witnesses in their own behalf, undertook to explain their conduct and denied having any knowledge of the fact that they were receiving stolen foodstuffs. The jury returned a verdict of guilty against both defendants. The court sentenced Tomer to imprisonment for one year and fined Mrs. Bradley $1,000 and suspended the imposition of a prison sentence upon her.[1]

■ No elaboration on the preceding statement of the evidence is needed to make it clear that the district court properly denied the motion made by each of the defendants for a judgment of acquittal. See Riggs v. United States, 5 Cir., 1960, 280 F.2d 949.

■ The appellants complain of several parts of the court's oral instructions to the jury. Their counsel was afforded opportunity to object, but did not object to the instructions before the jury retired, "stating distinctly the matter to which he objects and the grounds of his objections" as required by Rule 30, Federal Rules of Criminal Procedure, 18 U. S.C. We find no plain error seriously affecting the fairness of the trial. In the absence of any such error, we are not required to consider objections to the court's oral charge not properly preserved for review. Tomley v. United States, 5 Cir., 1957, 250 F.2d 549, 550; Thomas v. United States, 5 Cir., 1961, 287 F.2d 527, 530.

The judgments of conviction are

Affirmed.

1. Mrs. Bradley was 74 years old.