———o———

HYRAM J. CHARLES, Plaintiff in Error, *vs.* MARY T. McCUNE, Defendant in Error.

1. *Actions—Trover of stock sent South during the war.*—In suit for the value of certain stock, where it appeared that plaintiff had sent the same from Missouri into Texas after the President's proclamation of non-intercourse of August 16th, 1861, and that defendant had there converted it to his own use; *held*, that these facts would not bar plaintiff's right of recovery. The plaintiff's act in sending the stock through the lines authorized its appropriation by the general government but not by a private citizen.

*Error from Greene Circuit Court.*

*Bray & Hardin,* for Plaintiff in Error.

I. No doubt if plaintiff sent his mules into an insurrectionary district from the State of Missouri, the government of the United States would have had the right and authority whilst they were in transit, to have seized and confiscated them under the act of July 13th, 1861. But this right is given alone to the government for revenue purposes, and not to individuals in their private capacity and for their own private gain. This is not a penal statute but a revenue statute, and must be liberally construed so as to accomplish its object.

*McAfee & Phelps,* for Defendant in Error.

The transaction between the plaintiff and the deceased was unlawful and no suit can be sustained. (The Reform, 3 Wall., 632; The Sea Lion, 5 Wall., 647; The Ouchita, 6 Wall., 521.) In Carson vs. Horton, (46 Mo., 467,) the suit was on a note given in the State of Arkansas in Nov., 1861. The defendant plead the illegality of the consideration, and proved

the note was given in consideration of slaves taken from this State to Arkansas during the war, and it was held that plaintiff could not recover.

WAGNER, Judge, delivered the opinion of the court.

From the record it appears, that in 1863, the plaintiff and one McCune, defendant's intestate, both had stock in Texas in charge of a Mr. Messick, and that the stock had previously been taken there from this State. Plaintiff had three mules, and McCune obtained possession of them from Messick and converted them to his own use.

On the trial the plaintiff asked the court to instruct the jury that if they believed from the evidence, that McCune obtained the possession of plaintiff's mules by representing to Messick that he had purchased them of plaintiff, or by any other means, then they should find the issue for the plaintiff for the value of the mules.

This instruction the court refused to give, but, in behalf of the defendant, declared the law to be, that on and after the 16th day of August, 1861, and up to and including the year 1865, the plaintiff was, by law, prohibited from taking or sending his mules into Texas from this State, and if the jury believed that plaintiff did, in the year 1861, and after the 16th day of August, send or take, or direct, or consent that said mules should be taken from this State into the State of Texas, and that said mules were so taken or sent, then they should find the issue for the defendant, notwithstanding they might believe from the evidence, that after said mules were so taken or sent into Texas, McCune bought the mules from plaintiff or took and converted them to his own use.

After this instruction was given, plaintiff took a non-suit with leave to move to set the same aside, and after the refusal of the court to set aside the non-suit he sued out his writ of of error.

In support of the judgment below it is now insisted, that after the passage of the non-intercourse act by Congress and the President's proclamation, it was illegal for the plaintiff to

.remove his property into one of the insurrectionary States, and that no recovery can be had against any person for taking the same.

The fifth section of the act of July 13th, 1861, (12 U. S. Stat. at Large, 257,) authorized the President under the circumstances mentioned, to declare any State or part of a State, to be " in a state of insurrection against the United States," and it enacts that thereupon, "all commercial intercourse by and between the same and the citizens thereof, and the citizens of the rest of the United States, shall cease and be unlawful so long as such condition of hostility shall continue, and all goods and chattels, wares and merchandise, coming from said State or section into the other parts of the United States, and all proceeding to such State or section, by land or water, shall, together with the vessel or vehicle conveying the same, or conveying persons to or from such State or section, be forfeited to the United States."

In accordance with this enactment, on the 16th day of August, 1861, the President issued his proclamation interdicting all intercourse between the respective States or sections in hostility to the United States, with certain specified exceptions. The language of the act is clear and there is no room for doubt as to its meaning or effect. Commercial intercourse between the inhabitants of territory in insurrection, and those of territory not in insurrection was entirely prohibited, except under the license of the President, and according to certain regulations.

In the case of the Ouachita Cotton, (6 Wall., 521,) it was held. that the statute just referred to and the subsequent President's proclamation. rendered void all purchases of cotton from the rebel Confederacy by citizens or corporations of New Orleans, after the 6th of May, 1862. From this latter time dates the restoration of the national authority over New Orleans, and that part of Louisiana; and hence its citizens thenceforth, come within the disabilities of the acts. The law cuts off commercial intercourse, and was aimed at the resources of the enemy.

In the present case the removal of the property was unquestionably illegal and rendered it liable to confiscation by the government. But both of the parties were citizens of the same jurisdiction, and there was no trading or intercourse with the enemy.

Because plaintiff's property was illegally in another State or section, it does not thence follow that another person had the right to appropriate it without having any legal or moral claim upon it. The government might have confiscated it for the public use, but I cannot see what right McOune had to confiscate it for his private benefit.

Wherefore it follows that the judgment should be reversed and the cause remanded; the other judges concur.