[No. 17532. Department Two. December 20, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v.
D. N. SCHOONOVER, *Appellant.*[1]

LARCENY (2)—PROPERTY SUBJECT—OUTLAWED WHISKEY. The out-
lawed and contraband nature of whiskey does not prevent the same
from being the subject of larceny, notwithstanding section 25 of the
national prohibition act declaring that no property rights shall exist
in any such liquor or property.

SAME (25-2)—VALUE OF PROPERTY—EVIDENCE—SUFFICIENCY. In a
prosecution for the larceny of contraband whiskey, its value is suf-
ficiently shown by the evidence of a witness that it had a market
value in excess of the statutory requirement for grand larceny.

SAME (18). In a prosecution for the larceny of contraband
whiskey, in which the ownership is testified to by the person in
whose possession it was at the time of the theft, it is not error to
refuse to compel such witness to testify as to his source of title to
support the charge of ownership.

WITNESSES (103)—CROSS-EXAMINATION—CREDIBILITY. In a prose-
cution for the larceny of contraband liquor, it is not error to restrict
the cross-examination of a witness from whom it was taken, for the
purpose of affecting his credibility, it having already appeared that
he was engaged in a criminal transaction.

CRIMINAL LAW (444) — APPEAL — HARMLESS ERROR — CONDUCT OF
JUDGE—COMMENT ON EVIDENCE. It is not an unlawful comment on
the evidence in a criminal case to state, in answer to objections,
that it was the duty of the prosecuting attorney to talk the case
over with the witnesses.

SAME (354)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—ALIBI. It
is not an abuse of discretion to refuse a new trial for the purpose of
showing an alibi, where it appears that the proffered evidence
establishing defendant's presence at another place related to a
different hour, leaving ample time for the defendant to have arrived
at the place of the crime at the time of its commission, and the
evidence at the trial left no doubt of the identity of the accused and
his participation in the offense.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered December 28,

[1] Reported in 211 Pac. 756.

1921, upon a trial and conviction of grand larceny. Affirmed.

*Henry Clay Agnew,* for appellant.

*J. W. Selden* and *Leo Teats,* for respondent.

FULLERTON, J.—D. N. Schoonover and Owen Baker were convicted of the crime of grand larceny, under an information charging them with taking from one Peter Marinoff, and converting to their own use, one hundred and sixty-five bottles of intoxicating liquor and one hundred dollars in money, the property of Marinoff. From the judgment of conviction, Schoonover appeals.

The information charged, and the evidence tended to show, that the property was taken by trick and device. It appears that, early in the evening on which the offense was committed, Baker met one Cunningham at a railway depot in the city of Tacoma, and inquired of him where intoxicating liquor could be procured. Cunningham answered that he had none himself, but could take him to a person he thought could supply it. Baker and the witness then got into an automobile and drove to a place where one Tony Pelusso was found. Pelusso and Baker then entered into negotiations for liquors, Baker saying that he would take any quantity up to fifteen or sixteen cases. Pelusso said the liquor would be furnished by a friend of his, and that he did not know how much this friend had on hand, but he would have him deliver such quantity as he possessed. The friend subsequently proved to be the Peter Marinoff above mentioned. A time and place was appointed for the delivery, and the parties separated.

Sometime after eight o'clock of the same evening, Cunningham again met Baker at the depot, from

whence they drove in Baker's car to the appointed place, where they found Pelusso. Shortly thereafter Marinoff appeared with his car, in which he had fifteen cases of intoxicating liquors. The parties proceeded to transfer the liquors from Marinoff's car to Baker's, and had nearly completed the task when Schoonover and another person appeared, claimed themselves to be police officers of the city of Tacoma, and pretended to put under arrest Cunningham, Pelusso, Marinoff, and one Williams, who had accompanied Marinoff; Baker being permitted to drive away with the liquors which had been loaded into his car. Marinoff and Pelusso were then searched by the pretended officers, and one hundred dollars was taken from the person of Marinoff, and one hundred and twenty-five dollars from the person of Pelusso. Marinoff was then handcuffed to Williams, and all of the persons arrested were put into Marinoff's car and he was directed to drive to the police station. On the way, the driver was told by the pretended officers to stop the car, and inquiry was then made as to which of the persons was responsible for the liquors, and upon Marinoff's taking the blame upon himself, the rest were told to go. Marinoff was then directed to drive on, and after he had gone a short distance, the pretended officers again told him to stop, saying they wished to use a near-by telephone. They left the car and immediately disappeared, whereupon Marinoff drove to his home, and shortly thereafter made complaint to the city police officers of Tacoma. The third person engaged in the transaction was not recognized, nor apprehended. The defense of Schoonover and Baker on the merits was a general denial, aided by an alibi.

The first contention on the appeal is that the court erred in submitting to the jury the question of the

larceny of the intoxicating liquors; the argument being that intoxicating liquors, since they are contraband under both the state law and the national prohibition act, have no value and are not, therefore, a subject of larceny. In so far as the question is affected by our state laws, we have decided contrary to the contention in *State v. Donovan,* 108 Wash. 276, 183 Pac. 127. There the precise question was presented, and, after citing and reviewing the sustaining authority, we held that its outlawed and contraband nature did not prevent it from being the subject of larceny. But subsequent to the decision of the cited case, the national prohibition act was enacted, the twenty-fifth section of which provides that it shall be unlawful to have or possess any liquor, or property designed for the manufacture of liquor, in violation of the act, and that "no property rights shall exist in any such liquor or property." (41 U. S. Stat. at Large 315.)

It is argued that this provision of the Federal act necessitates a conclusion different from that adopted by us, as our statute does not contain the quoted words. We cannot think, however, that this difference in the wording of the statutes in any way affects the principle upon which the rule is rested. The state punishes the wrongful taking of personal property belonging to, or in the possession of, another because of the offense against the majesty of its laws and because of the inherent wickedess and criminality of the act, as well as because of the wrong done to the individual whose property is taken. Stated in another way, the state punishes larceny because it is larceny, and, that the guilty may not escape, it will treat any form of personal property having actual value as having value for the purposes of larceny, notwithstanding it may be unlawful for the possessor to have it in possession.

Furthermore, the declaration of outlawry against intoxicating liquors and the declaration that there are no property rights therein is for the purpose of discouraging its possession, not for the purpose of encouraging larceny, and it is not the policy of the law, nor conducive to good morals or good government, to allow the laws directed against one offense to become a shield against the punishment of another.

The case of *People v. Spencer*, 201 Pac. (Cal.) 130, is cited to us as a case decided since the enactment of the national prohibition act, holding that there cannot be larceny in the wrongful taking of intoxicating liquors since the passage of that act. But an examination of the case will show that the court pursued the line of reasoning adopted in the cases opposed to our own case of *State v. Donovan, supra,* and that its reasoning, if followed, would have required a contrary conclusion in that case. It was not rested solely on the declaration in the Federal act to the effect that no property rights exist in intoxicating liquors held for unlawful purposes. A case decided since the passage of the act, and sustaining our view, is *People v. Wilson,* 298 Ill. 257, 131 N. E. 609.

It is next asserted that there was no competent proof of value of the property taken sufficient to make the offense grand larceny. A witness testified that it not only had a value far in excess of the statutory requirement for grand larceny, but that it had a market value in excess of that sum. The argument, however, is that, since the property was the subject of outlawry by both the state and the national laws, it could have no value of any kind at the place and time of its taking. But this does not follow. That the property had no value in the market overt for the purposes of barter and sale is doubtless true. But the evidence abundantly shows

that it had a ready sale and was in demand at that time and place. The fact, moreover, that the appellant considered it of sufficient value to justify its wrongful taking is some evidence of value. A sale of the property would, of course, be criminal, but that is not the question before us. We are now considering the appellant's criminality, and, if his act was criminal, no criminal act or intent on the part of another would justify it.

It is further contended that the court unduly abridged the cross-examination of the witness Marinoff as to the ownership of the property. After the witness had testified that he owned the property, and that it had been taken before he had parted with its possession, the appellant sought to cross-examine him as to his source of title, the manner by which and from whom he had obtained it, and the like. These questions the witness declined to answer, and the court refused to compel him so to do. But we find no error in this. It is well settled that the ownership of stolen property in cases of larceny may be laid in the real owner, or laid in the person in whose possession the property was at the time of the theft. (17 R. C. L. 61.) Here it was shown that the property was taken from the possession of the person alleged in the information to be the owner. This was sufficient to establish this branch of the offense. It would have been no defense had the witness testified that he had been guilty of a crime in obtaining it, or that the actual ownership was in another, and the court was not required to enter upon these collateral inquiries. Nor can we see how his credibility would have been affected by answers to the effect that he was a criminal. That he was engaged in a criminal transaction and was, in fact, a criminal was patent without further testimony, and seemingly it

would not further affect his credibility to have his own testimony to that effect.

On cross-examination of one of the state's witnesses the witness was asked as to the number of times he had talked the case over with the prosecuting attorney. To this question the prosecuting attorney interposed an objection on the ground of immateriality, and in the colloquy which followed between the court and the prosecuting attorney, the court remarked in substance that, notwithstanding the attorney would have been derelict in his duty had he not talked to the witness concerning his testimony, the question was nevertheless proper, and permitted the witness to answer. This remark of the court is challenged as a comment on the evidence in violation of the constitutional inhibition relating thereto. We cannot so regard it. The justness of the statement cannot be questioned, and it could have conveyed to the jury no knowledge that they did not otherwise possess. Whether a comment or not, therefore, the statement was without prejudice to the defendant, and it is only prejudicial comment of which he can complain.

Finally, it is objected that the court erred in overruling the motion for a new trial. The motion was based on affidavits tending to show an alibi. They were to the effect that the appellant was seen in the lobby of a hotel in the city of Seattle as late as half-past seven o'clock on the evening of the day the crime was committed. As the state's evidence fixed the time of the crime as between half past eight and nine o'clock, it is argued that these affidavits strongly support the appellant's claim of mistaken identity, as he could not have possibly reached the scene of the crime between half-past seven and the latest time fixed as the happening of the offense. But notwithstanding

the affiants are positive in their statements and are six in number, we are unable to conclude that the showing warrants an interference with the trial court's discretion. There is no showing in the record as to the distance between the place the appellant was seen and the place of the crime, nor is there any showing of the time it would take to travel the distance between the places either by private conveyance or on the conveyances of the established public carriers. But assuming that these facts are within the judicial knowledge of the court, it knows that the traveling time of the public conveyance between the places ranges from an hour and a quarter to an hour and forty-five minutes, and that private conveyances frequently travel the distance in less time than the shortest time of the public conveyances. If the appellant was at Seattle at seven-thirty o'clock and the offense was committed at nine, it is easily within the range of possibility for him to have traveled the distance within the time and have had time to spare. But perhaps there is no specie of evidence resting in the remembrance of witnesses which is more uncertain and unreliable than is evidence as to the precise time a person was seen at a particular place, especially where, as in this instance, there is nothing which associates the time with the event. This fact alone is sufficient to create the suspicion that there could be a reasonable variance between the testimony and the fact.

But there are other reasons for concluding that the state's witnesses were not mistaken. The appellant, Schoonover, had formerly been a member of a police force. He was positively identified as one of the participants by all of the state's witnesses who were present at the scene of the crime. The affidavits state that Baker was with him when he was seen in the hotel

lobby, and it is all but conclusively established that Baker was one of the participants in the crime. Moreover, the appellant was arrested two days after the offense was committed, a considerable distance from the scene of the crime, in the company of Baker, traveling in an automobile of the same manufacture and bearing the license number of the automobile which Baker drove from the depot at Tacoma to the scene of the crime. These facts, we conclude, leave no reasonable doubt that the appellant was an active participant in the crime, and that there is no justifiable reason for awarding him a new trial.

The judgment is affirmed.

PARKER, C. J., MAIN, and TOLMAN, JJ., concur.