LEO J. GONCH, Respondent, *v.* REPUBLIC STORAGE COMPANY, INC., Appellant.

First Department, December 17, 1926.

**Warehousemen** — action to recover value of whisky stolen from defendant's bonded warehouse — whisky was shipped from France — plaintiff had authority from Federal officers to trans-ship whisky to Mexico — delay in shipping required storage of whisky in defendant's bonded warehouse — defense that plaintiff had no title under National Prohibition Act (41 U. S. Stat. at Large, 307, tit. 2, § 25) and suffered no loss — evidence — records produced by United States Customs officials were properly admitted — provision in National Prohibition Act that no property rights shall exist in any liquor cannot be availed of by defendant — defense is insufficient.

In an action to recover the value of whisky which was stored in defendant's bonded warehouse awaiting transshipment to Mexico, it appeared that the plaintiff purchased the whisky in France, that it was shipped to this country, and that the plaintiff had permission from the Federal authorities to trans-ship the whisky

to Mexico. Due to a delay in shipping, the whisky was stored in defendant's bonded warehouse and was stolen therefrom. The defendant interposed the defense that the plaintiff, under the National Prohibition Act, had no title to the whisky and, therefore, suffered no damage and could not recover.

Records produced by the United States Customs officials consisting of letters authorizing the trans-shipment of the whisky were properly admitted in evidence and established that the whisky was not imported illegally and was in this country with full permission of the government officials awaiting transshipment to a foreign country.

The defendant cannot rely upon a provision in the National Prohibition Act (41 U. S. Stat. at Large, 307, tit. 2, § 25) to the effect that no property right shall exist in any such liquor, that is, liquor imported without the written consent of the Commissioner of Internal Revenue, for that provision has no application as between individuals, but applies merely as between the Federal government and the person illegally possessing whisky.

Even though the plaintiff could not dispose of the whisky, still it was property having an intrinsic value and the defendant could not, therefore, defend on the ground that the plaintiff suffered no loss.

Furthermore, at the time the whisky was lost, the plaintiff apparently had the legal right to possess it and could, at that time, have obtained the necessary permission to reship the same. The defendant cannot rely upon the fact that a part of the whisky not stolen from the bonded warehouse was subsequently seized by the government, for, at the time the whisky was stolen, the government had taken no steps to confiscate the same and the plaintiff was entitled to withdraw it from the defendant's warehouse.

APPEAL by the defendant, Republic Storage Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of July, 1925, upon the verdict of a jury.

The verdict for $7,660.64 was for damages found by the jury to have been sustained by the plaintiff as bailor of twenty-seven barrels of whisky placed in the defendant's bonded warehouse by United States customs officials after the same had been gauged by them which whisky the defendant, as bailee, failed to deliver to the plaintiff upon demand.

*Outerbridge Horsey* of counsel [*Jackson, Fuller, Nash & Brophy,* attorneys], for the appellant.

*Robert H. Charlton* of counsel [*John T. Loughran* with him on the brief], for the respondent.

MERRELL, J. The plaintiff, a hotelkeeper at Norwalk, Conn., purchased from the Finance and Trading Company in the spring of 1922 thirty barrels of whisky at that time located at Havre, France. The whisky was shipped to the port of New York upon the White Star liner *Olympic.* The day before its arrival at the New York port the plaintiff contracted to sell the thirty barrels of whisky to the Chauhtemoc Trading Company of the city of Mexico. The plaintiff employed a firm of custom house brokers to attend

to the arrival, gauging and reshipment of the thirty barrels of whisky to the city of Mexico upon the Ward Line Steamship *Esperanza.* Upon its arrival at the port of New York the United States customs officials gauged the whisky and, owing to an unforeseen delay in reshipping the same to Mexico, it was taken, under permits, to the defendant's bonded warehouse. In September following the plaintiff called at the defendant's warehouse with a view of paying the storage charges upon the thirty barrels of whisky and to obtain delivery thereof for the purpose of reshipment to Mexico, space for which had been engaged upon the Ward Line Steamship *Esperanza,* and was then informed by representatives of the defendant that the warehouse had been broken into and twenty-seven of the barrels of whisky stolen and taken away. Action was then brought by the plaintiff against the defendant warehouseman to recover the value of the lost liquor upon the theory that the defendant had been guilty of negligence and had not taken proper precautions to prevent the theft of the plaintiff's property. Upon the question of negligence of the defendant in safeguarding the property conflicting evidence was given at the trial. The jury by its verdict resolved such evidence in favor of the plaintiff, holding the defendant had been guilty of actionable negligence, and had failed to properly safeguard plaintiff's property.

It is the main contention of the defendant upon this appeal that at the time of the loss of the twenty-seven barrels of whisky from the defendant's warehouse, the plaintiff had no title thereto, and that so far as the plaintiff was concerned, the whisky was without value to him and that, therefore, he suffered no damage by reason of its loss. The liquor in question was brought by the plaintiff to the port of New York openly and without subterfuge and under authority of the prohibition officials. There were introduced in evidence by the plaintiff, under objection of counsel for the defendant that the evidence was " incompetent, irrelevant and immaterial," certain documents produced by the United States customs officials as records contained in the office of the Collector of Customs at New York. The first of these letters, signed by the Acting Chief, Division of Customs, was as follows:

" Treasury Department, Office of the Secretary,
" Division of Customs.
" WASHINGTON, *June* 24, 1922.
" In reply refer to 108377.
" THE COLLECTOR OF CUSTOMS, NEW YORK, N. Y.
" SIR.—I am enclosing for your information a copy of a letter addressed by the Prohibition Commissioner to Harry C. Wood & Company, 2 Rector Street, New York City, regarding the trans-

shipment of 30 barrels of American whiskey en route to Chauhtemoc Trading Company, Mexico City. In view of the advice given the Company by the Prohibition Commissioner, you should permit the liquor to go forward to destination in the usual manner.

" Respectfully,
"J. D. NEVIUS,
" *Acting Chief, Division of Customs.*"
" Enclosure No. 22724."

The letter referred to in the foregoing communication was addressed to Harry C. Wood & Company, plaintiff's custom house broker, and signed by R. A. Haynes, Prohibition Director, and was as follows:

" Copy.

"*June* 20, 1922.

" HARRY C. WOOD & COMPANY,
" 2 Rector Street, New York City, N. Y.
" GENTLEMEN.— Reference is made to your letter under date of June 19, 1922, and to visits by your representatives, relative to a shipment from France of 30 barrels of American whiskey to Chauhtemoc Trading Company, Mexico City, Mexico.

" The correspondence from the said concern indicating that the whiskey is to be used for medicinal purposes, the whiskey is to be shipped via New York, at which place it is to be transferred from one vessel to another, the transportation from New York to Vera Cruz being by the Ward Line Steamer *Esperanza.*

"A communication has been addressed to the Federal Prohibition Director at New York City, advising him that if the facts are as alleged, and there is nothing indicating that the shipment is not *bona fide,* this office is willing that the liquor shall be transferred in New York and forwarded as indicated.

" Respectfully,
" (Signed)   R. A. HAYNES,
" *Prohibition Director.*"

Aaron H. Newman, a clerk in the Warehouse Division of the United States Customs House at New York city, testified that these documents were records of the United States Customs House in New York. They were produced by the government officials and were received in evidence without specific objection on the part of counsel for the defendant that they were not properly proven, counsel objecting to the same merely upon the ground that they were incompetent, irrelevant and immaterial. I think the letters were properly received in evidence by the trial court. It would appear from these records of the Treasury Department, Division of

Customs, that the thirty barrels of whisky in question were legally imported by the plaintiff with the full permission of the government officials and were intended for reshipment to a foreign country. The liquors were never intended for use in the United States.

The appellant, in support of its contention that the liquor in question was without value to plaintiff and that, therefore, plaintiff suffered no damage because of its loss, relies upon the provision of the so-called Volstead Act* that "no property rights shall exist in any such liquor or property," viz., liquor imported without the written consent of the Commissioner of Internal Revenue. It seems to me, notwithstanding such provision of the Volstead Act, that no property right shall exist in such liquor, that, nevertheless, as between the defendant warehouseman and the plaintiff, the plaintiff was the owner of the liquor in question. I do not think it lies in the mouth of the defendant to question such ownership.

In passing upon defendant's motion to set aside the verdict of the jury the trial court rendered an opinion in which the court held that the provision of the Volstead Act declaring that no property right existed in liquor imported without proper consent was for the purpose merely of aiding the prohibition officials in the performance of their duties. (125 Misc. 791.) The Court of Appeals of this State in *People* v. *Otis* (235 N. Y. 421) seems directly to have disposed of the question as to the property rights in and value of liquor illegally possessed. In *People* v. *Otis* the defendant was indicted for stealing a quantity of whisky and was convicted of petit larceny thereof. Judge ANDREWS, writing for a unanimous court, defined "larceny" as the illegal taking of some article of value with the intent to deprive the true owner of his property or to appropriate it to the use of the taker or another, and states that value in and ownership of the thing taken were essential elements of the crime. Judge ANDREWS further said: "With certain exceptions the possession of intoxicating liquor is now unlawful. Liquor so possessed may not be sold, transported or delivered to any one. It may be seized by the government. The possessor, not being able to make any legal use of it, it is said the liquor itself has no value. This is, however, to make the value of a chattel to its possessor the test as to whether it is the subject of larceny. Such is not the rule. (*People* v. *Gilbert*, 163 Mich. 511.) It is enough if the object taken has inherent value. (*Commonwealth* v. *Riggs*, 14 Gray, 376.) No one can doubt that whisky has such value. It may be sold by the government and the proceeds covered into the treasury. It may be sold

---

* See 41 U. S. Stat. at Large, 315, chap. 85, tit. 2, § 25.— [REP.

by druggists. That it is held illegally is immaterial. [Citing cases.]

" The statute further provides that ' no property rights shall exist ' in liquor illegally possessed. There can be no larceny of property not subject to ownership. How then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words there is no answer, for it must be conceded that to enforce the recent amendment to the Constitution, Congress may declare that to steal liquor shall no longer be a crime.   *   *   *

" The truth is that sections 25, 26 and 27 are but three of a number of sections providing remedies by which the statute may be more conveniently enforced. A separate sentence or clause is not to be wrenched from its context. The sections are to be construed as a whole in the light of their general object. We start with the presumption that the possession of liquor is illegal. (Sec. 33.) Such liquor may be seized.   *   *   *   Mingled as it is with these provisions the clause as to property rights was clearly intended solely to protect government officials in the exercise of their duties. *   *   *   However broad the language used its effects should be confined to the purposes for which it was intended. Property rights in such liquor are not forever ended. They pass to the government. They pass from it to a purchaser. Section 25 is merely a police regulation, adapted to aid the enforcement of the prohibition law and to be applied with that end in view. The intention of Congress went no further."

It seems to me, from this very clear pronouncement of the Court of Appeals, that it is futile for the defendant to claim that the plaintiff had no property rights in the liquor lost and suffered no damages by reason of the defendant's failure to deliver it to the plaintiff upon demand. The liquor in question was openly brought to the port of New York for trans-shipment to Mexico, steamship space for which had been engaged by plaintiff's customs broker. At the time this liquor came to the New York port it is a matter of common knowledge that the Volstead Act was not enforced with the rigidity which now prevails, and since that time various rules have been issued by the government making more strict the conditions under which liquor may be possessed in this country. It is very clear from the government documents received in evidence that this liquor was legally in the possession of the plaintiff and was to be transshipped to Mexico with government permission. At the time it was stolen from the defendant's warehouse no steps had been taken on the part of the government to seize it. If additional permits were required from the Commissioner of Internal Revenue

in order to obtain permission to ship the liquor from New York to Mexico, such permits undoubtedly would have been obtained by the plaintiff, who it appears, and who even counsel for the defendant conceded at the trial, was acting in entire good faith. Was there any reason to believe at the time the liquor was lost that the plaintiff would not obtain the required permission to reship the same? I find no such evidence in the record. It seems to me entirely beside the question to urge, as counsel for the appellant did off the record, that the three barrels of liquor which were not stolen were subsequently seized by the government. The fact remains that at the time they were taken from the defendant's warehouse no steps had been taken by the government to seize the liquor and that at that time, so far as the defendant was concerned, the plaintiff was entitled to withdraw them from the bonded warehouse and ship the barrels of liquor to Mexico. Unquestionably had the liquor not been stolen and had the same been delivered to plaintiff when demanded, the thirty barrels of whisky would have gone forward to their destination at the city of Mexico without let or hindrance, "in the usual manner," as stated in the above-quoted letter from the United States Treasury Department to the Collector of Customs at New York  The situation is not unlike that in *Averill* v. *Chadwick* (153 Mass. 271), where the plaintiff kept and exposed for sale two rabbits in violation of the Massachusetts Game Laws. The defendant, a deputy of the Board of Game Commissioners, seized the rabbits. The plaintiff sued for their conversion by the defendant. The Massachusetts court held the law to be that property unlawfully acquired might nevertheless be the subject of larceny, and that the person who takes even a stolen object from a thief may himself be convicted therefor in spite of the criminality of his immediate predecessor in crime. In *Charles* v. *McCune* (57 Mo. 166), the plaintiff had sent certain stock from Missouri to Texas in contravention of a proclamation of the President during the Civil War, and the plaintiff was held to be entitled to recover the value of the property as against the defendant who acquired the possession of the stock and converted the same to his own use. The court held that while the violation of the proclamation rendered the stock subject to confiscation, that constituted no defense to the conduct of the defendant.

In *Commonwealth* v. *Coffee* (9 Gray [Mass.], 139) the Supreme Judicial Court of Massachusetts held that even in a case where intoxicating liquor was purchased in violation of law and intended by the purchaser to be sold in violation of the Massachusetts statute, and transported in violation of law, such liquor was, nevertheless, the subject of larceny. At the trial of the defendant for larceny of

the liquor the district attorney introduced evidence tending to show that the alleged owner of the whisky, from whom it was stolen by the defendant, had bought the same of an unauthorized dealer in intoxicating liquors in Boston for the purpose of retailing the same contrary to law, and that the purchaser of the liquor caused the same to be illegally transported and before it reached its destination it was stolen and concealed by the defendant. The defendant contended "that there could not be such property, possession, ownership, custody and right of return of the liquor, under the circumstances of the case, as to support this indictment." Counsel for the defendant asked: "Will the law lend its aid to recover this article, and put it back into the power of the purchaser, to enable him to pursue his unlawful purpose?" The court tersely answered the inquiry in the following language: "The thing taken was property and the subject of larceny. The owner might forfeit and lose the property, if upon proper legal process it should appear that it was procured and held for an illegal purpose, but only upon such proof, and in the method the law points out. *Commonwealth* v. *Rourke*, 10 Cush. 397; *Ewings* v. *Walker, ante* 95." (9 Gray, 95.)

It is said in Page on Contracts (§ 541): "If A acquires property under an illegal contract with B, X cannot seize such property, convert it to his own use, and in an action by A, set up the illegality of the contract whereby A acquired such property." In other words, it does not lie in the mouth of the defendant to urge that the ownership of the plaintiff in the twenty-seven barrels of whisky lost was illegal, and that the plaintiff had no title therein, and suffered no damages by reason of the loss of the whisky.

I think the verdict was entirely proper, and that the judgment entered thereon should be affirmed, with costs.

CLARKE, P. J., FINCH, MARTIN and BURR, JJ., concur.

Judgment affirmed, with costs.