[Crim. No. 1914. Second Appellate District, Division Two.—February 21, 1930.]

THE PEOPLE, Respondent, v. RALPH ODENWALD et al., Appellants.

John A. Deweese and Josiah Coombs for Appellants.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Warner I. Praul for Respondent.

THOMPSON (IRA F.), J.—The appellants were convicted of the offense of burglary. They prosecute this appeal from the judgment. But two reasons are assigned for a reversal and they are: (1) That the proof shows that the property which the appellants intended to steal consisted of intoxicating liquors possessed contrary to the National Prohibition Act [27 U. S. C. A.] and Wright Act [Stats. 1921, p. 79] of this state, and therefore not the subject of larceny, and (2) that there is a fatal variance between the allegations of the information and the proof in this: That the information charged the appellants with entering the garage of one Jeanette Chaffen "with the intent then and there and therein to feloniously and unlawfully steal, take and carry away the goods and personal property of the said Jeanette Chaffen" whereas the proof failed to show that Jeanette Chaffen was the owner of the property intended to be appropriated.

To sustain their first contention counsel for appellants rely upon the authority of *People* v. *Spencer,* 54 Cal. App. 54 [201 Pac. 130]. The testimony establishes that the

liquor was unlawfully possessed and therefore the instant cause is brought squarely within the doctrine of the Spencer case and the authorities there cited. The question to be determined by us is: Shall we adhere to the rule there laid down? It cannot be denied that there is a sharp conflict in the decisions from other jurisdictions. The National Prohibition Act (Barnes' Fed. Code, 1921, Supp.) provides by section 8352 [27 U. S. C. A., sec. 39] as follows: "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, *and no property right shall exist in any such liquor or property.*" (Italics ours.) The authorities which hold that liquor so possessed cannot be the subject of burglary, including the Spencer case, proceed upon the theory that since one may not have a property right therein, the property itself cannot be stolen; that inasmuch as it can have no legitimate or lawful value to its owner *it is without inherent value.* We are not ready to accede to this reasoning. Regardless of its lawful or legitimate value the appellants considered it of sufficient inherent value to make it the subject of larceny. Reasoning which accords with our own is found in *State* v. *Schoonover,* 122 Wash. 562 [211 Pac. 756, 758], as follows:

"The first contention on the appeal is that the court erred in submitting to the jury the question of the larceny of the intoxicating liquors; the argument being that intoxicating liquors, since they are contraband under both the state law and the National Prohibition Act, have no value, and are not, therefore, a subject of larceny. In so far as the question is affected by our state laws we have decided contrary to the contention in *State* v. *Donovan,* 108 Wash. 276 [183 Pac. 127]. There the precise question was presented, and, after citing and reviewing the sustaining authority, we held that its outlawed and contraband nature did not prevent it from being the subject of larceny. But, subsequent to the decision of the cited case, the National Prohibition Act was enacted, the twenty-fifth section of title 2 of which provides that it shall be unlawful to have or possess any liquor, or property designed for the manufacture of liquor, in violation of the act, and that 'no property rights shall exist in any such liquor or property.' (41

U. S. Stats. at Large, 315 [27 U. S. C. A., sec. 39].) It is argued that this provision of the Federal Act necessitates a conclusion different from that adopted by us, as our statute does not contain the quoted words. We cannot think, however, that this difference in the wording of the statutes in any way affects the principle upon which the rule is rested. The state punishes the wrongful taking of personal property belonging to or in the possession of another because of the offense against the majesty of its laws, and because of the inherent wickedness and criminality of the act, as well as because of the wrong done to the individual whose property is taken. Stated in another way, the state punishes larceny because it is larceny, and, that the guilty may not escape, it will treat any form of personal property having actual value as having value for the purposes of larceny, notwithstanding it may be unlawful for the possessor to have it in possession. Furthermore, the declaration of outlawry against intoxicating liquors and the declaration that there are no property rights therein is for the purpose of discouraging its possession, not for the purpose of encouraging larceny, and it is not the policy of the law, nor conducive to good morals or good government, to allow the laws directed against one offense to become a shield against the punishment of another.

"The case of *People* v. *Spencer,* 54 Cal. App. 54 [201 Pac. 130], is cited to us as a case decided since the enactment of the National Prohibition Act, holding that there cannot be larceny in the wrongful taking of intoxicating liquors since the passage of that act. But an examination of the case will show that the court pursued the line of reasoning adopted in the cases opposed to our own case of *State* v. *Donovan, supra,* and that its reasoning, if followed, would have required a contrary conclusion in that case. It was not rested solely on the declaration in the Federal Act to the effect that no property rights exist in intoxicating liquors held for unlawful purposes. A case decided since the passage of the act, and sustaining our view, is *People* v. *Wilson,* 298 Ill. 257 [131 N. E. 609]."

In the case of *People* v. *Wilson,* cited in the quotation, we read: "Samuel Fox testified that the burglary was committed and several cases of whisky stolen which were of the value of $26.50 per case, and the first proposition of

counsel in support of the errors assigned is that the evidence failed to support the charge of burglary, because whisky, being contraband under the National Prohibition Act (41 Stats. 305), has no value except where it is purchased and kept under a government permit, and is therefore not the subject of larceny unless the indictment charges and the proof shows that a permit has been obtained by the person in whose possession the whisky is kept. Burglary may be committed where personal property which is the subject of ownership is taken, and the fact that the property is kept for an unlawful purpose does not change the nature of the crime. This has been decided as to intoxicating liquors kept for sale, contrary to the provisions of a statute, or property used for gambling purposes contrary to law, or a pistol the sale of which was forbidden. (*State* v. *May,* 20 Iowa, 305; *Bales* v. *State,* 3 W. Va. 685; *Commonwealth* v. *Smith,* 129 Mass. 111; *Osborne* v. *State,* 115 Tenn. 717 [92 S. W. 853, 5 Ann. Cas. 797]; 17 R. C. L. 29.) The whisky had an actual value, whether it had a market value or not, and was the subject of larceny.''

That there has been a confusion· of terminology, or a failure at all times to draw the distinction between property rights and property is indicated by the next excerpt taken from *Arner* v. *State,* 19 Okl. Cr. 23 [197 Pac. 710], as follows:

''The argument advanced by counsel for· defendants in support of these various assignments of error, and the contention made thereunder, is that, to constitute robbery there must be the taking of personal property from another by means of force or violence, and that the thing taken must be of some value. Therefore, it is contended that because the prosecuting witness had no property rights of any kind in the whisky of which he was possessed for the purpose of violating the prohibitory liquor laws, no property was taken from him, and therefore all the essential elements of the crime of robbery were not present in the taking of this whisky under the circumstances disclosed by the evidence.

''We cannot agree with this contention. Section 3620, Revised Laws 1910, *supra,* does not have the effect of altering or changing the inherent character or nature of whisky as personal property. An entire consideration of the prohibitory liquor laws of this state discloses that the intent

of the Legislature was to provide that intoxicating liquors possessed by a person for the purpose of violating any of the provisions of the prohibitory liquor laws should be contraband property as between the state, its officers, and such person; that a person unlawfully possessed of intoxicating liquors, etc., could not claim to have property rights in such articles in a proceeding brought by the state to confiscate them; not that the articles and things condemned, when unlawfully kept or used, were not property.

"In the case of *Tom Thomas* v. *State*, 13 Okl. Cr. 414 [164 Pac. 995], which was a conviction for the crime of murder committed by defendant while engaged in the perpetration of a whisky robbery, the contention was made that defendant was not guilty of the crime of murder committed in the perpetration of a robbery, because whisky used in violation of the law was not the subject of robbery. In passing upon this contention, this court, in the body of the opinion, said:

"'The contention that because whisky is contraband property in this state, as against the state and its officers, others are entitled to rob and murder . . . to obtain possession of it from one who is using it unlawfully, is wholly without merit. Neither robbery nor murder may be justified or excused on such a ground.'"

A very convincing statement is also found in *People* v. *Otis*, 235 N. Y. 421 [139 N. E. 562], in the following language:

"The statute (41 Stat. 315, tit. 2, Sec. 25) further provides that 'no property rights shall exist' in liquor illegally possessed. There can be no larceny of property not subject to ownership. How then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words, there is no answer; for it must be conceded that to enforce the recent amendment to the constitution, Congress may declare that to steal liquor shall no longer be a crime. It might think it wise to license theft so as to discourage intoxication. We should not, however, readily impute to it such a design. *Commonwealth* v. *Rourke*, 10 Cush. (Mass.) 397. Certainly the earlier declaration of the same statute (section 3) that its provisions are to be 'liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented' gives

no indication of such a purpose. To so construe the language of section 25 would be to encourage the transportation, distribution, and consumption of liquor by the thief.

"The truth is that sections 25, 26, and 27 are but three of a number of sections providing remedies by which the statute may be more conveniently enforced. A separate sentence or clause is not to be wrenched from its context. The sections are to be construed as a whole in the light of their general object. We start with the presumption that the possession of liquor is illegal. Section 33. Such liquor may be seized. Search warrants may be issued, but not with regard to private dwellings, with some exceptions. If being transported the officer making the seizure shall also take possession of the vehicle in which it is found. All this is to be followed by an orderly procedure in court. The court shall dispose of the liquor if it finds that it was unlawfully possessed. The court may order it destroyed, or may order that it be delivered to the government. The court is to deal with the vehicle in which the liquor may have been transported. Mingled as it is with these provisions, the clause as to property rights was clearly intended solely to protect government officials in the exercise of their duties. Questions had arisen as to the taking and destruction of property illegally used without a formal condemnation by court decree. *Lawton* v. *Steele*, 152 U. S. 133 [14 Sup. Ct. 499, 38 L. Ed. 385]. It was there said that the owner of property so taken had his remedy. He might, if the use of the property was not in fact illegal, replevy it or have an action for its value, and in such cases the burden would be on the defendant to prove jurisdiction. It was to answer as far as possible these suggestions, to protect the officer making the seizure or destroying the liquor, to secure the title of him who might purchase the liquor from the government, to permit a summary remedy by court decree, possibly also to vest immediately the title to such liquor in the state (*People* v. *Case*, 220 Mich. 379 [27 A. L. R. 686, 190 N. W. 289]), that the provisions as to presumptions and as to property were enacted. However broad the language used, its effects should be confined to the purposes for which it was intended. Property rights in such liquor are not forever ended. They pass to the government. They pass from it to a purchaser. Section 25 is merely a police

regulation, adapted to aid the enforcement of the prohibition law and to be applied with that end in view. The intention of Congress went no further."

Any person who contemplates the serious consequences possibly attendant upon a universally accepted doctrine that contraband liquor cannot be the subject of larceny, must do so with serious misgivings concerning its soundness. Focusing our attention upon the fiction that because it has no legal value, it has no value at all, we must close our eyes to the fact that its illegal value (using that term solely for the purpose of distinction) is such as to arouse the lust of greed, to create a new type of dangerous and vicious criminal, the one designated in common parlance as the "hijacker." Can he steal and rob and pillage with impunity— simply because the object of his search cannot be made the subject of lawful possession or sale? The question shocks our sense of stabilized society, for the protection of which laws denouncing burglary and like offenses have been adopted. Let him who meditates upon the problem picture to himself the increasing number of breaches of the peace, affrays and killings, if the illicit dealer in and thief of intoxicating liquors may break locks and doors without fear of drastic punishment, and he will not affirm the right. What becomes of the sanctity of the home if the burglar with apparent intent (whether real or feigned) to steal intoxicating liquor may ransack it without possibility of serious punishment except an intent to steal something else of value can be proven? The idea is appalling and we revolt against the acceptance of any such standard.

Authorities sustaining the view we entertain, in addition to those from which we have quoted, are listed as follows: *State* v. *Friedman*, 98 N. J. L. 577 [120 Atl. 8]; *Mance* v. *State*, 5 Ga. App. 229 [62 S. E. 1053]; *August* v. *State*, 11 Ga. App. 798 [76 S. E. 164]; *Hoback* v. *United States*, 284 Fed. 529–532; *Gonch* v. *Republic Storage Co.*, 218 App. Div. 584 [219 N. Y. Supp. 46.]

■ Concerning the second reason assigned by appellants for a reversal of the judgment it is conceded by respondent that there is no testimony that Jeannette Chaffen was the owner of the liquor. It becomes necessary, therefore, to inquire if the allegation is essential to the informa-

tion. In *People* v. *Rogers,* 81 Cal. 209 [22 Pac. 592], it is said: "A point is made that it is not alleged that Jones and Harding were partners, or that they were the owners of the building or its contents. Under the code definition of burglary, it was not necessary to allege the partnership, and the ownership of the building and its contents was sufficiently designated. (*People* v. *Henry,* 77 Cal. 445 [19 Pac. 830].)" And in *People* v. *Price,* 143 Cal. 351 [77 Pac. 73], it was held unnecessary to describe the house by ownership, it being sufficient to designate it by street and number. There is less reason for designating the ownership of the property which the burglar attempts to feloniously appropriate than there is to designate the ownership of the building. At least the same principle would seem to require us to say that the allegation was not essential, hence there is no fatal variance. . An added reason why appellants may not be heard to complain is found in the fact that the liquor was in the garage of the residence of Jeannette Chaffen and it has been held sufficient to show that the property "was in the possession and under the control of the person from whom it is claimed to have been taken" (*People* v. *Hayes,* 72 Cal. App. 292 [237 Pac. 390]).

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 7, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1930, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a hearing in this court after decision by the District Court of Appeal we do so with the realization that the judgment herein is contrary to and, in effect, overrules the case of *People* v. *Spencer,* 54 Cal. App. 54 [201 Pac. 130]. We are satisfied with the reasoning and conclusions of the District Court of Appeal in the present case and pronounce it a correct declaration of the law. We, therefore, deem it unnecessary to grant the petition herein merely for the purpose of enter-

ing a like judgment in this court based on the same reasoning and conclusions.

The petition for a hearing is denied.

All the Justices concurred.