STATE OF NEBRASKA, APPELLEE, V. JOHN DWYER, APPELLANT.
411 N.W.2d 341

Filed August 28, 1987.   No. 86-961.

Richard L. Schmeling, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Defendant, John Dwyer, appeals his jury convictions in the district court for Lancaster County on one count of robbery, in violation of Neb. Rev. Stat. § 28-324 (Reissue 1985), and one count of use of a weapon during the commission of a felony, in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1985). The defendant was sentenced to the state Department of Correctional Services for a term of 2 to 4 years on each count, with the sentences to be served consecutively. On appeal, the defendant assigns as error the trial court's failure to grant defendant's motions to dismiss at the close of the State's case and again at the close of all the evidence and alleges the verdicts of the jury are contrary to law and to the evidence. The defendant further alleges the court erred in preventing the defendant from introducing testimony concerning drug dealings between the victim and the two codefendants for purposes of impeachment and in failing to sustain defendant's objection as to testimony concerning the amount of money the victim paid for the marijuana which was taken from him. Finally, the defendant alleges the district court erred in giving instruction No. 9 over objection of the defendant and in failing to give two of defendant's proposed instructions. For the reasons hereafter stated, the judgment and sentences of the district court are affirmed.

There is little dispute concerning the events leading up to and

including the robbery. The record shows that Allen Bennett, the complaining witness, was residing at 421 Main Street, apartment No. 1, in Hickman, Lancaster County, Nebraska, at the time of the robbery. Bennett suffers from muscular dystrophy, has no use of his legs, has limited use of his arms, and is confined to a wheelchair, which he operates by using a hand control on the arm of the chair. Bennett testified that on the evening of March 11, 1986, he was at home in his apartment, watching television. The door to his apartment was unlocked. At approximately 7 p.m., three people wearing ski masks, later identified as defendant John Dwyer, James Rosenkrans, and Timothy Tuttle, burst into his apartment. At the time the three entered the apartment Bennett did not know who they were. One of the three moved behind the witness, pulled back the witness' head, and told him to be quiet, to keep still, and he would not get hurt. Bennett saw one of the intruders holding a "black stiletto type knife" with a blade length of approximately 6 to 8 inches. The individual standing behind Bennett placed electrical tape over Bennett's mouth and disabled his wheelchair by releasing the pulleys on the sides of the wheels. The defendant, who was later identified as the individual holding the knife, moved in front of the witness and held the knife to his throat. Rosenkrans and Tuttle searched through Bennett's desk. The ordeal lasted approximately 30 seconds, during which time the witness was repeatedly told to keep quiet and he would not get hurt. After Rosenkrans and Tuttle found what they were looking for, the three intruders left the apartment, leaving Bennett stranded in his wheelchair. Bennett was able to remove the tape from his mouth and call for help. Several residents of the apartment building responded to Bennett's call. Bennett related to them the events of the robbery.

Initially, Bennett was unable to determine whether or not anything was missing, and felt something had gone wrong and the intruders were scared off. However, Bennett later discovered that a bag containing approximately $2^1/2$ ounces of marijuana had been taken from his desk.

Approximately 20 minutes after the robbery, a sheriff's deputy arrived at the scene. Bennett told the deputy generally what had happened, but instead of reporting that marijuana

had been stolen, he told the deputy that the intruders had stolen cash in the amount of $325. This amount was the sum Bennett paid for 4 ounces of marijuana approximately 2 weeks prior to the robbery. Some months later, Bennett called the police and admitted to the falsity of the initial report and told the investigators that marijuana, rather than money, had been stolen.

The three men involved in the robbery were subsequently arrested and charged with robbery and use of a weapon during the commission of a felony. On September 10, 1986, the codefendant Rosenkrans entered into a plea agreement under which Rosenkrans entered a plea of no contest to a charge of attempted robbery. On September 11, 1986, the codefendant Timothy Tuttle entered into a plea agreement under which Tuttle pled guilty to attempted robbery. Neither codefendant was required, under the terms of the agreements, to testify against the defendant.

At the defendant's trial, the State adduced the testimony of the managers of the apartment building, who were Douglas and Debra Rosenkrans, the brother and sister-in-law of James Rosenkrans. They testified that during the early evening of March 10, 1986, they observed three men, one of whom was wearing a ski mask, "hanging around" the apartment building. They saw the three men in a vehicle bearing the license number 2-G7771, which was registered to James Rosenkrans, talked to them, and identified them as Tuttle, James Rosenkrans, and the defendant, who was the person wearing the ski mask.

At about 7 p.m. the night of the robbery, a resident of the apartment building saw James Rosenkrans and two other persons, whom he did not know, in the apartment building. James Rosenkrans testified that he took part in the March 11 robbery of Bennett and that defendant also participated. The testimony of this witness generally corroborated that of Bennett and that of the managers of the apartment building. Defendant did not testify.

At the conclusion of the trial, the jury returned a verdict of guilty on each count. The defendant was sentenced to the state Department of Correctional Services. Defendant timely appealed to this court.

In his appeal, the defendant alleges that the verdicts are contrary to the law and the evidence and that the court erred in failing to sustain the defendant's motions to dismiss, motions which for the purpose of this case will be treated as motions for a directed verdict. In Nebraska, it has been held that a trial court will be justified in directing a verdict of not guilty only where there is a total failure of competent proof to support a material allegation in the information, or where the testimony is of so weak or doubtful a character that a conviction based thereon could not be sustained. *State v. Meints*, 225 Neb. 335, 405 N.W.2d 15 (1987); *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987). In determining whether the evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. Those determinations are within the province of the jury. *State v. Meints, supra; State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). A jury verdict of guilty will not be overturned on appeal unless it is based on evidence so lacking in probative force that it can be said as a matter of law that the evidence is insufficient to support the verdict. *State v. Joy*, 220 Neb. 535, 371 N.W.2d 113 (1985).

It has been shown that the facts concerning the alleged robbery are not in dispute. Defense counsel makes no attempt to show that the defendant was not involved in the events which took place on March 11, 1986. The only point the defendant argues on appeal is whether the property stolen in the present case, marijuana, has any value as contemplated by the robbery statute, § 28-324(1). That statute states, "A person commits robbery if, with intent to steal, he forcibly and by violence . . . takes from the person of another any money or personal property of any value whatever." Defendant contends that marijuana is a controlled substance, that possession of marijuana is illegal, and that therefore marijuana has no legal value and cannot be the subject of robbery, in the absence of specific statutory provisions to the contrary. The defendant specifically refers to the failure of the Legislature to include language defining contraband as property in the robbery statute, although such language appears in the theft statute, Neb. Rev. Stat. § 28-509(6) (Reissue 1985). While we agree with

the defendant that marijuana is a controlled substance and possession thereof subjects one to criminal penalties, we do not agree that it has no value for purposes of the robbery statute. Robbery is classified in our statutes as an offense against the person, and the focus in the statutes forbidding such claim is on the protection of the victim rather than the monetary value of the item taken. See *Hairston v. Com.*, 2 Va. App. 211, 343 S.E.2d 355 (1986). The lack of monetary or intrinsic value of property is not a defense to a prosecution for robbery. *People v. Greene*, 129 Misc. 2d 1008, 495 N.Y.S.2d 600 (1985). See, also, *State v. Gomez*, 234 Kan. 447, 673 P.2d 1160 (1983). The fact that the item stolen may have been contraband and cannot have legal value does not alter the situation. The taking of contraband by force is subject to penal sanction. *People v. Dillon*, 34 Cal. 3d 441, 668 P.2d 697, 194 Cal Rptr. 390 (1983); *State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1961).

Defendant cites *People v. Spencer*, 54 Cal. App. 54, 201 P. 130 (1921), to the effect that intoxicating liquor could not be the subject of robbery because it was an illegal substance. Defendant admits that the *Spencer* case was later "eroded" by *People v. Bailey*, 82 Cal. App. 700, 256 P. 281 (1927). We rely on the California Supreme Court statement in *People v. Dillon, supra* at 457 n.5, 668 P.2d at 704 n.5, 194 Cal. Rptr. at 397 n.5, where the court stated:

Defendant apparently concedes that robbery of contraband is subject to penal sanction. California was for some time the only jurisdiction to adhere to a contrary rule (*People v. Spencer* (1921) 54 Cal.App. 54, 301 P. 130), but our court has long since agreed to the overruling of this aberrant precedent. (*People v. Odenwald* (1930) 104 Cal.App. 203, 211-212, 285 P. 406, 286 P. 161 [opn. on den. of hg.].) Today the rule is universal that by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals.

We agree. Robbery of contraband may be subject to the penal sanction of § 28-324. In the present case the marijuana, although contraband, could be the subject of robbery if shown to have "any value whatever." The court, when considering the

defendant's first motion to dismiss, stated, "It would be the height of naivete . . . to believe that the property that was taken in this robbery did not have a value when it is common knowledge that drugs are illegally sold upon the street . . . and that money can be had for that item." The court later found that there was sufficient evidence from which the jury could conclude that the marijuana taken from Bennett had a value of approximately $202. Defendant's contention that the verdict is contrary to the law and evidence in that marijuana has no value and cannot be the subject of a robbery is without merit.

Defendant assigns as error the refusal of the trial court to permit defendant to impeach Bennett's credibility by testimony "concerning drug dealings between the victim and two of the co-defendants in order to impeach the credibility of the victim's testimony." Examination of the record shows that the court permitted much cross-examination of Bennett concerning prior sales of marijuana to James Rosenkrans in the presence of Tuttle, but did not permit defendant's attempt to show that Rosenkrans had purchased Valium from Bennett. The court determined such evidence was irrelevant. We agree.

Other errors are assigned in the giving or refusing of certain instructions, but these errors are not discussed. We have held that a party who claims error in a proceeding is required to point out the factual and legal basis that shows the error. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). In the event the assignments of error are not supported by accompanying arguments in the brief, but are only statements of general dissatisfaction with the conclusion reached by the trial court, this court will not speculate in regard to the reasoning behind the defendant's dissatisfaction. *State v. Copple, supra; Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985).

There is no error. The judgment of the district court is affirmed.

AFFIRMED.